CLERK
U S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

2024 JUL 26  P 11: 21

---------------------------------------------

| | | |
|---|---|---|
| LISA CORDOVA, individually and on behalf of N.C., a minor, | : | CASE NUMBER: _____ |
| | : | |
| Plaintiffs, | : | |
| | : | JUDGE: _____ |
| v. | : | |
| | : | |
| MIDDLETOWN TOWNSHIP POLICE DEPARTMENT; JOHN E. KAISER; R. CRAIG WEBER; MONMOUTH COUNTY PROSECUTOR'S OFFICE; JANE and JOHN DOES 1-99; and ABC AGENCIES 1-50, | : : : : | **COMPLAINT FOR VIOLATIONS OF 42 USC 1983, THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION** |
| Defendants. | : | **JURY DEMANDED** |

---------------------------------------------

## PARTIES

1. Plaintiff, Lisa Cordova (hereinafter "Cordova" or "plaintiffs") is the mother of N.C. (hereinafter "N.C." or "plaintiffs") a Hispanic minor and outstanding student.

2. Middletown Township Police Department (hereinafter "MTPD" or "defendants" ) is a law enforcement agency located in Middletown Township, New Jersey.

3. John E. Kaiser (hereinafter "Kaiser" or "defendants") is an individual residing in Monmouth County, New Jersey and who was employed at all times relevant to this

1

litigation as the Deputy Chief of the Middletown Police Department.

4. R. Craig Weber (hereinafter "Weber" or "defendants") is the Chief of Police of Middletown Township Police Department located in Monmouth County, New Jersey and resides in Monmouth County, New Jersey.

5. Monmouth County Prosecutor's Office (hereinafter "MCPO" or "defendants") is a law enforcement agency located in Monmouth County, New Jersey.

6. Jane and John Does 1-99 (hereinafter "Jane and John Does 1-99" or "defendants") are unknown at this time and shall be identified through the discovery process.

7 ABC Agencies 1-50 (hereinafter "ABC Agencies" or "defendants") are unknown at this time and shall be identified through the discovery process.

## JURY TRIAL

8. Plaintiffs demand a jury trial.

## JURISDICTION & VENUE

9. This Court has subject matter jurisdiction under 28 USC 1331 on the basis of there being a federal question relating to the United States Constitution. See Bivens v. Six Unknown Narcotic Agents, 403 U.S. 338 (1971).

10. This Court has subject matter jurisdiction under 28 USC 1331, on the basis of there being a federal question relating to 42 USC 1983.

11. This Court has jurisdiction, as the amount in controversy exceeds $75,000.00 (USD), not counting costs of litigation and court costs.

12. Venue is appropriate because the defendants, and all remaining defendants who

2

whose identities will be determined via discovery are agencies or employees of agencies located in the State of New Jersey and therefore is a high probability that all remaining defendants live in or near this Court's district.

## ALLEGATION OF FACTS

13. On or about 28 July 2022, N.C. a Hispanic juvenile age 14 year old and an outstanding scholar was on summer break after completing his studies at middle school when he and his neighborhood friends went down to the local park to try out N.C's new toy water blaster.

14. The weather in Middletown, New Jersey at the time of the above event, according to historical records, was nearly 90 degrees fahrenheit with a humidity of approximately ninety percent.

15. N.C. and his friends were enjoying using the toy water blaster due to the extremely hot and humid weather.

16. One of the boys went home and informed his father, John E. Kaiser, the Deputy Chief of the Middletown Township Police Department of the above activities.

17. Kaiser, at the time off duty from his law enforcement job raced to the park in his official Middletown Township Police Department undercover vehicle and commenced off duty action in unlawfully detaining N.C. against his will and seizing the toy water blaster. Kaiser also recklessly and placing the public in harm, neglgently drove his police vehicle off the roadway and through the grass area of the park in pursuit of N.C., who was simply standing by his bicycle with his friends.

3

18. Kaiser, who lived a few blocks from the plaintiffs, knew the plaintiffs through school activities, including but not limited to the PTA and other related neighborhood activities.

19. N.C. was then illegally detained, his property illegally searched by Kaiser, and forcefully handcuffed behind his back and transported to the Middletown Township Police Department for interrogation.

20. Upon arrival at the Middletown Township Police Department, N.C. was brought into the station and told to stand his face pressed against a hardened surface. Not only was this police action clearly violative of any standard of practice concerning police intervention when related to contact with a juvenile, but same clearly violates the requisite "continuous face to face supervision" requirement. Later, the defendants also claimed to keep an eye on N.C. through video surveillance, instead of the "continuous face to face supervision" requirement.

21. It took four police officers a great length of time and force to remove the overly tight handcuffs the defendants had placed on N.C.  N.C. suffered clearly apparent injury due to the officers' imprudent handcuffing of N.C.

22   N.C. was then placed in an animal type fenced cage and was not offered an opportunity to use the bathroom facilities, not offered any water or any other food, although other officer(s) were engaging in liquid refreshments in front of N.C., nor was N.C. asked about his medical, physical, or mental well being by the defendants.

23. Cordova immediately arrived at the Middletown Township Police Station and

4

demanded to speak with N.C.   Such access to Cordova's son was denied and Cordova was informed that her son was currently being interviewed by the Middletown Township Police.

24. A detective from the Monmouth County Prosecutor's Office was later dispatched to the Middletown Township Police Department to conduct a supplemental interview of N.C.

25. That detective made certain contradictory and questionable observations concerning the evidence collected and retained by law enforcement officials.

26. That detective informed the plaintiff that there would be no charges filed against N.C. at that time however after he concluded his investigation the possability of charges could be presented.

27. That detective also advised Cordova that the matter was not serious and the in the worst case there would be a summons issued against N.C. for a single simple assault charge.

28. Several hours later, that detective then released N.C. to his parents.

29  On 04 August 2022, N.C.'s father, Alejandro Cordova,  filed a formal complaint against the officer(s) at Middletown Township Police Department for the treatment of his son (N.C.) on 28 July 2022.

30. On 17 August 2022, the Monmouth County Prosecutor's Office approved filing charges against N.C.   Those extremely serious charges included two (2) counts of assault (2C:12-1A(1)); one (1) count of possession of a weapon for an unlawful purpose

5

(2C: 39-5D); and one (1) count of unlawful possession of a weapon (2C:39- 4(D), which are overtly contrary to the previous representation(s) of the defendants.

31. Simultaineously with the above charges being brought forth, the Monmouth County Prosecutor's Office, on 17 August 2022, authored a communication to N.C. 's father (Alejandro Cordova) that asserted that the Monmouth County Prosecutor's Office concluded their review of Mr. Cordova's complaint and that the Monmouth County Prosecutor's Office "Exonerated" Deputy Chief Kaiser of Mr. Cordova's allegations.

32. The Monmouth County Prosecutor's 17 August 2022 letter to Mr. Cordova explained that *"(W)hile the police department does have rules which generally prohibit officers from becoming involved in maters involving family matters, this prohibition is not absolute. The rules provide for certain exceptions to include where an officer's involvement is necessary to prevent injury to another or where a serious offense has been committed."*

33. It is without dispute that the previously identified "simple" matter of young boys using a toy water blaster on an extremely hot day in a local park and the boys and their parents all knowing each other as neighbors became unhinged as a direct result of Deputy Chief Kaiser's abuse of power that resulted in N.C.'s civil and constitutional rights being violated.

34. It is also undisputed that the matter became the subject of imprudent actions of the defendants to find a way to unethically dismiss the clearly overt need to pursue an

internal investigation and charges being factually brought against Deputy Chief Kaiser by the defendant's' methodology of wrongfully bringing unfounded charges against N.C.

35. N.C.'s attorney sought zealously to have the charges and judicial proceeding against N.C. diverted to bring about a resolution that would not only be meaningful and would pursue the interest of justice, but such efforts were entirely rejected by the defendants to this civil litigation and the defendants continued to maliciously prosecuted N.C. for unethical reasons.

36. In light of the defendants in the instant litigation to seek to prosecute the 14 year old minor (N.C.) who incidently had no prior contact with the law, the Complaint(s) against N.C. reached final adjudication in the Superior Court of New Jersey and the end result was a dismissal of all charges.

37. Notices of Claim were served upon the Monmouth County Prosecutor's Office as well as the Middletown Township Police Department as dictated and required by law.

## CLAIMS FOR RELIEF

*Count I. Violations of 42 USC 1983*
*Failure to Train*

38. Plaintiffs incorporate and realleages as if set forth here in full the allegations of Paragraphs 1 through 37.

39. Defendants' wrongful detention of N.C. constitutes a deprivation of "rights,

7

privileges, or immunities".

40. Defendants are responsible for the training of all law enforcement officers in the defendant agencies.

41. The very fact that the defendants knowingly engaged in activity which clearly violated N.C.'s rights is unconscionable and actionable.

42. The fact that the defendants acted in a manner to abuse their power as law enforcement persons/agencies was not simply a case of failing to use good judgment, but rather failing to be trained as to the requirements of their duties.

## Count II. Violations of 42 USC 1983
### Use of Excessive Force

43. Plaintiff's incorporate and reallege as if set forth here in full the allegations of Paragraphs 1 through 42.

44. Defendants used excessive force against N.C. and acted in such a manner in disregard of N.C's constitutional rights.

45. Defendants knew of their unlawful actions and made a great effort to disguise such imprudent actions by not allowing N.C., a fourteen year old, to meet with his parents prior to or during his first interrogation.

46. N.C.'s parents were at the very same police station which N.C. was being "held" and forced to stand with his nose against the wall and then placed in what amounted to an animal cage.

47. It is without excuse that defendants unlawfully used their police powers and

8

authority to hold N.C in an isolated manner, away from his parents, to execute some form of punishment against N.C. for his use of a toy water blaster involving Deputy Chief Kaiser's son.

### Count III.  Violation of Fourth Amendment
### Unreasonable Search and Seizure

48.  Plaintiffs incorporate and reallege as if set forth here in full, the allegations of Paragraph 1 through 47.

49.   Defendants violated the Fourth Amendment rights of N.C.  by exposing him to unreasonable search and seizure.

50   What amounted to boys playing with a water item in the local park escalated at the hand of Deputy Chief Kaiser for  very bad reason(s), including but not limited to Deputy Chief Kaiser being prejudice against N.C., as a direct result of N.C. being a Hispanic child.

51.   The defendants condoned Deputy Chief Kaiser's unlawful action by knowingly furthering said illegal action.

52.  The actions of the defendants clearly amount to an abuse of power which then prompted the unreasonable search and seizure in violation of N.C.'s constitutional rights.

### Count IV.  Corruption

53.  Plaintiffs incorporate and reallege as if set forth here in full, the allegations of Paragraph 1 through 52.

54. The record reflects that the defendants engage in actions to conceal and coverup the wrongdoing of Deputy Chief Kaiser.

55. The actions of the defendants to engage in activity to attempt to dissolve the complaint of N.C.'s father by creating a false fact pattern and tampering with evidence is evident on it's face.

56. The actions of the defendants can only be titled, by definition, as corruption at a very high level of government to protect the guilty and to expose the innocent to the unwarranted wrath of the justice system and a life long influence on innocent party's lives.


*Count V.   Malicious Prosecution*

57. Plaintiffs incorporate and reallege as if set forth here in full, the allegations of Paragraph 1 through 56.

58. Defendants conspired against N.C. by wrongfully prosecuting N.C. for violations of law which were not originally considered by the State, but brought forth for the sole goal of attempting to remove Deputy Chief Kaiser from an internal affairs action and served  purely as retalitory for the lawful action of N.C.'s father filing a complaint against Kaiser.

59. The facts and evidence support that this "simple" case evolved into a matter of malicious prosecution and made up charges for the intention of prosecuting N.C. for proposed actions which are a far cry from any definition detailed by law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for the following relief:

a) Actual and punitive damages against the defendants for $5,000,000.00;

b) Costs of the action;

c) Reasonable attorneys' fees;

d) for other such relief  as the Honorable Court deems just and appropriate;

Respectfully submitted,

Hugo R. Harmatz, Esquire
Attorney for Plaintiffs
Law Offices of Hugo Harmatz
12 Christopher Street, Suite 200
Eatontown, New Jersey  07724
Telephone:  (732) 845-1331
E-mail:  lawyur@aol.com

Dated:  23 July 2024

11